Andrew M. Hutchison, SBN 029819
LOEB & LOEB LLP
Two Embarcadero Center, Suite 2510
San Francisco, CA 94111
Telephone: 415.903.3200
Facsimile: 415.903.3201
Email: ahutchison@loeb.com

Attorneys for Plaintiff,
CHRISTIAN COPYRIGHT
LICENSING INTERNATIONAL, LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

### PHOENIX DIVISION

| | |
|---|---|
| CHRISTIAN COPYRIGHT LICENSING INTERNATIONAL, LLC, <br><br> *Plaintiff,* <br><br> vs. <br><br> MULTITRACKS.COM LLC <br><br> *Defendant.* | Case No. _____ <br><br><br> **COMPLAINT** |

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

23599289.2
241165-10001

1    Plaintiff Christian Copyright Licensing International, LLC ("CCLI"), by and

2  through undersigned counsel, for its Complaint against Multitracks.com LLC ("MTC"),

3  states as follows:

4                                    **INTRODUCTION**

5    1.    MTC chose to initiate this dispute with CCLI by filing an administrative

6  complaint. MTC's filing of that complaint is part and parcel of its ongoing effort to

7  disrupt CCLI's business. MTC has forced CCLI to file this action in order to respond and

8  protect its own rights.

9                                      **PARTIES**

10   2.    CCLI is a limited liability company organized under the laws of Oregon

11  with its principal place of business in Vancouver, Washington.

12   3.    Upon information and belief, MTC is a limited liability company organized

13  under the laws of Texas with its principal place of business in Cedar Park, Texas.

14                           **JURISDICTION AND VENUE**

15   4.    This Court has subject-matter jurisdiction over this action pursuant to 28

16  U.S.C. §§ 1331 (federal-question jurisdiction) and 1338(a) (any act of Congress relating

17  to patents, copyrights, and trademarks), as this case arises under the Lanham Act of

18  1946, 15 U.S.C. § 1051, *et seq.*, as amended, and the Anticybersquatting Consumer

19  Protection Act, 15 U.S.C. §§ 1114(2)(d)(v), 1125(d)(1)(B)(ii) (the "ACPA").

20   5.    MTC consented to personal jurisdiction and venue before this Court

21  pursuant to the Uniform Domain-Name Dispute Resolution Policy ("UDRP") of the

22  Internet Corporation for Assigned Names and Numbers ("ICANN"), due to the location

23  of the relevant domain-name registrar, GoDaddy Inc. ("GoDaddy"), whose principal

24  place of business is in Tempe, Arizona.

25                           **FACTUAL BACKGROUND**

26                                        **CCLI**

27   6.    Founded in 1988, CCLI is the preeminent provider of copyright licenses

28  that facilitate worship services across the United States. CCLI offers licenses for various

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

23599289.2
241165-10001

1

1  uses of musical compositions to churches, e.g., the reproduction and distribution of

2  praise and worship songs in connect with congregational worship activities including

3  rehearsing, singing, and online streaming.

4      7.    In 2020, CCLI acquired Omnisonic Media Group LLC d/b/a Loop

5  Community ("Loop Community"). Loop Community is a leader in the multitracks-for-

6  worship licensing industry. Loop Community provides, inter alia, licenses to churches

7  and worship leaders to use multitrack sound recordings in connection with

8  congregational worship activities. Among other things, Loop Community offers the

9  Prime iOS app, which is widely used for the playback of multitrack sound recordings

10  during worship services.

11                                  **MULTITRACKS**

12      8.    Multitracks are the individual audio parts that are recorded separately for

13  audio production.

14      9.    Often, each track is a different instrument—a separate track for keyboard,

15  drums, guitars, bass, etc.

16      10.    Multitracks are useful for worship music in numerous ways. For example, a

17  musician is able to practice and learn the part for his or her individual instrument by

18  listening to one track. Or, if a bass player is sick, a band can playback the sound

19  recording of the bass part for a particular song while the other band members play along.

20      11.    Multitracks' roots trace back to Les Paul, the renowned American jazz,

21  country, and blues guitarist, songwriter, luthier, and inventor. In 1955, Mr. Paul worked

22  with engineers at Ampex to create the first eight-track recorder, which he dubbed the

23  "Octopus."

24      12.    Multitracking is now a common and integral part of modern sound

25  recording. Among other benefits, multitracking produces higher fidelity sound

26  recordings.

27      13.    The term "multitrack" means "using more than one audio track." *See*

28  *multitrack*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

23599289.2
241165-10001

2

multitrack; *see also multitrack*, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/multitrack ("involving the mixing of several separately recorded tracks (= pieces of music or sound), or made using this method").

14.     "Multitrack" is simply the common name for a class of products that facilitate the recording, playback, and/or mixing of sound recordings.

15.     Consistent with the definition of "multitrack," the term is commonly understood by the public to refer to audio files containing individual parts, or so-called "stems," of a sound recording.

16.     Numerous entities who offer products that utilize or involve multitracks use the term "multitrack" or "multitracks" to describe themselves and their products, including their music applications.

17.     The term "multitrack" is widely used to describe the licensing of audio tracks and so-called "stems" for worship music.

18.     The terms "multitrack" and "multitracks" are used by numerous entities as a descriptive part of their products and website domain names.

**CCLI Registers the Domain Name "multitrack.com"**

19.     In 2021, CCLI used the domain-name broker service GoDaddy to register the domain name multitrack.com.[1]

20.     The domain name multitrack.com resolved to loopcommunity.com and, later, a blog owned and maintained by CCLI at worshipfuel.com.

21.     CCLI registered the domain name multitrack.com in good faith.

22.     Because CCLI, through its affiliate Loop Community, is in the business of licensing multitracks, CCLI had a legitimate interest in using the domain name multitrack.com to provide information about, and sell, multitrack licenses to consumers.

---

[1] For reasons unknown to CCLI, GoDaddy recorded the name of the registrant organization in its system as "George George," apparently using the first name of the CCLI employee who completed the registration.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

23599289.2
241165-10001

1          **ANTICYBERSQUATTING CONSUMER PROTECTION ACT**

2          23.     Congress enacted the ACPA to address the problem of cybersquatting,

3    which is the registration, trafficking in, or use of a domain name with a bad-faith intent

4    to profit from a trademark that is identical or confusingly similar to such domain name.

5          24.     The ACPA sought to address " 'cybersquatters' or 'cyberpirates' " who

6    abuse the rights of actual trademark holders by purposely and maliciously registering as a

7    domain name the trademark name of another company to divert and confuse customers."

8    106 Cong. Rec., S10517.

9          25.     Around the same time, ICANN promulgated the UDRP to provide an

10   administrative remedy, dictated by contract, to address cybersquatting.

11         26.     ICANN adopted the UDRP to address the "deliberate, bad faith registration

12   of domain names of well-known and other trademarks." WIPO Final Report, Par. 23

13   (1999).

14         27.     When drafting the ACPA, Congress was concerned that overreaching

15   cybersquatting claims could be asserted by an entity who did not actually have trademark

16   rights and take a domain name from a registrant who did not possess the bad-faith intent

17   specifically required under the ACPA and administrative policies such as the UDRP.

18         28.     In light of the potential for such overreaching claims, Congress provided

19   domain-name owners with a cause of action to determine that they have not violated the

20   ACPA. 15 U.S.C. § 1114(2)(d)(v), 1125(d)(1)(B)(ii).

21         **MTC INTERFERES WITH CCLI'S DOMAIN-NAME REGISTRATION**

22         29.     MTC's actions in the present case are precisely the type of overreaching

23   behavior that motivated Congress to establish a cause of action for lawful use under the

24   ACPA.

25         30.     MTC is another company that offers licenses for multitracks for use in

26   worship services. Upon information and belief, MTC selected multitracks.com as its

27   company domain name precisely because the term "multitracks" is a generic, or at least

28   merely descriptive, term that describes the type of product being offered.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

23599289.2
241165-10001

31.     Indeed, MTC's own website refers to "multitracks" as what it offers to consumers for sale:

Get one custom plan
for all your resources

✓ RENT MULTITRACKS

✓ MULTITRACKS PLAYER

32.     In recent years, MTC has begun acting in bad faith by trying to corner the market for multitrack licensing by monopolizing the generic terms "multitrack" and "multitracks." In essence, MTC has sought to deploy trademark law to stifle, rather than foster, competition—in direct contravention of the law.

33.     On November 21, 2022, MTC launched its latest effort to try to unfairly stifle competition and interfere with CCLI's business. MTC filed a UDRP Complaint against CCLI before FORUM, a private dispute-resolution company. MTC sought an order requiring the registrar, GoDaddy, to transfer the domain name multitrack.com from CCLI to MTC.

34.     In its UDRP Complaint, MTC claimed to have trademark rights in three purported marks: MULTITRACKS CLOUD, MULTITRACKS STREAMING, and MULTITRACKS.COM (collectively, the "Purported Marks").

35.     MTC made this claim even though *none* of the Purported Marks are registered on the United States Patent and Trademark Office's ("USPTO") Principal Register.

36.     In fact, MTC had previously sought to register MULTITRACKS CLOUD on the Principal Register, but the USPTO *denied* that registration because the term was merely descriptive.

37.     MTC attempted to register MULTITRACKS STREAMING in 2017 but quickly abandoned that effort after the USPTO refused registration because—yet again—the purported mark is, at best, merely descriptive.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23599289.2
241165-10001

5

38.     With respect to MULTITRACKS.COM, MTC only recently filed an *application* on November 2, 2022, a mere nineteen days before filings its UDRP Complaint against CCLI, and the USPTO has not yet taken any action on that application.

39.     MTC is not the exclusive owner of the generic and/or descriptive word "multitrack" throughout the world, nor is the term "multitrack" exclusively associated with MTC.

40.     Simply put, MTC has not established that it has protectable rights, whether through registrations or by common law, in the Purported Marks.

41.     In addition to claiming rights it has not established, MTC claimed that CCLI registered and used the domain name multitrack.com in bad faith.

42.     In fact, CCLI did not register and use the domain name in bad faith.

43.     CCLI has the right to use the generic term "multitrack," which is simply a class of products that CCLI offers through its affiliate Loop Community.

44.     MTC has *not* established that it has rights in the Purported Marks, so CCLI necessarily could not, and did not, act in bad faith.

45.     In a decision dated February 19, 2023, the UDRP panel—which consisted of one private-practice attorney based in England—granted MTC's complaint and ordered the transfer of the domain name multitrack.com from CCLI to MTC.

46.     The UDRP panelist cited *zero* case law in his decision. That is not surprising, given that MTC's claim to have rights it has not established in the Purported Marks defies well-established law and has no factual basis. The panelist's decision was obviously and egregiously wrong.

## COUNT I

### DECLARATORY RELIEF – NO CYBERPIRACY/ BAD FAITH INTENT
### (15 U.S.C. §§ 1114(2)(d)(v), 1125(d)(1)(B)(ii))

47.     CCLI realleges and incorporates each and every allegation set forth above as if fully set forth herein.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23599289.2
241165-10001

6

48.     MTC has asserted that it has established rights in the Purported Marks; CCLI has no rights or legitimate interests with respect to the <u>multitrack.com</u> domain name; CCLI registered and used the <u>multitrack.com</u> domain name in bad faith; and CCLI's ownership of the <u>multitrack.com</u> domain name is likely to cause consumer confusion.

49.     In fact, MTC has *not* established that it has rights in any of the Purported Marks; CCLI has rights and legitimate interests with respect to the <u>multitrack.com</u> domain name; CCLI did not register or use the <u>multitrack.com</u> domain name in bad faith; and CCLI's ownership of the <u>multitrack.com</u> domain name is not likely to cause consumer confusion.

50.     An actual and justiciable controversy exists between the parties regarding whether CCLI's use of the domain name <u>multitrack.com</u> is not unlawful.

51.     Accordingly, CCLI is entitled to and seeks a declaration under the ACPA that its registration and use of the domain name <u>multitrack.com</u> is not unlawful.

**COUNT II**

**DECLARATORY JUDGMENT**

**(28 U.S.C. §§ 2201, 2202)**

52.     CCLI realleges and incorporates each and every allegation set forth above as if fully set forth herein.

53.     MTC has asserted that it has established rights in the Purported Marks; CCLI has no rights or legitimate interests with respect to the <u>multitrack.com</u> domain name; CCLI registered and used the <u>multitrack.com</u> domain name in bad faith; and CCLI's ownership of the <u>multitrack.com</u> domain name is likely to cause consumer confusion.

54.     In fact, MTC has *not* established that it has rights in any of the Purported Marks; CCLI has rights and legitimate interests with respect to the <u>multitrack.com</u> domain name; CCLI did not register and use the <u>multitrack.com</u> domain name in bad faith; and CCLI's ownership of the <u>multitrack.com</u> domain name is not likely to cause

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23599289.2
241165-10001

7

consumer confusion.

55.     An actual and justiciable controversy exists between the parties regarding whether CCLI's use of the domain name multitrack.com is not unlawful.

56.     Accordingly, CCLI is entitled to and seeks a declaration that its registration and use of the domain name multitrack.com is not unlawful.

### <u>**DEMAND FOR JURY TRIAL**</u>

57.     CCLI requests a jury trial upon all claims and matters so triable.

### <u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, CCLI respectfully requests that the Court:

a)     Enter judgment on its behalf against MTC on all counts;

b)     Enter an order declaring that CCLI's use of the domain name multitrack.com is not unlawful, within the meaning of the ACPA;

c)     Enter an order enjoining MTC from any and all further efforts to cause the domain name multitrack.com to be transferred to MTC;

d)     Award CCLI its costs and reasonable attorneys' fees; and

e)     Award such other and further relief as the Court deems just and proper.


Dated: March 1, 2023                    LOEB & LOEB LLP

                                        By: /s/ Andrew M. Hutchison
                                            Andrew M. Hutchison

                                        Attorneys for Plaintiff
                                        CHRISTIAN COPYRIGHT
                                        LICENSING INTERNATIONAL, LLC

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23599289.2
241165-10001

8