**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christian Copyright Licensing International LLC,<br><br>              Plaintiff,<br><br>v.<br><br>Multitracks.com LLC,<br><br>              Defendant.<br>——————————————————<br>Multitracks.com LLC,<br><br>              Counterclaimant,<br><br>v.<br><br>Christian Copyright Licensing International LLC,<br><br>              Counter Defendant. | No. CV-23-00368-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Multitracks.com LLC's ("MTC") motion to stay this action. (Doc. 39.) For the following reasons, the motion is denied.

**BACKGROUND**

On March 1, 2023, Christian Copyright Licensing International, LLC ("CCLI") filed the complaint. (Doc. 1). The complaint alleges as follows.

CCLI, which was founded in 1988, offers copyright licenses for "the reproduction and distribution of praise and worship songs" for churches to use in "congregational worship activities including rehearsing, singing, and online streaming." (*Id.* ¶ 6.) In 2020,

CCLI acquired Omnisonic Media Group LLC d/b/a Loop Community ("Loop Community"), a "leader in the multitracks-for-worship licensing industry," which "provides, inter alia, licenses to churches and worship leaders to use multitrack sound recordings in connection with congregational worship activities." (*Id.* ¶ 7.) "In 2021, CCLI used the domain-name broker service GoDaddy to register the domain name multitrack.com," which "resolved to loopcommunity.com and, later, a blog owned and maintained by CCLI at worshipfuel.com." (*Id.* ¶¶ 19-20.)

MTC, "another company that offers licenses for multitracks for use in worship services," owns the company domain name "multitracks.com"—off by one letter from CCLI's "multitrack.com." (*Id.* ¶ 30.) MTC has made three attempts to register asserted marks including the word "multitracks"—which is "simply the common name for a class of products that facilitate the recording, playback, and/or mixing of sound recordings"— on the United States Patent and Trademark Office's ("USPTO") Principal Register. (*Id.* ¶¶ 13-18, 36-40.) At the time Plaintiff filed the complaint, two of MTC's registration attempts, regarding the asserted marks MULTITRACKS CLOUD and MULTITRACKS STREAMING, had already been denied registration because the term "multitracks" is "merely descriptive." (*Id.* ¶¶ 36-37.) On November 2, 2022, MTC filed a registration application as to the third asserted mark, MULTITRACKS.COM. (*Id.* ¶ 38.) That application remains pending.[1]

On November 21, 2022, MTC filed a complaint against CCLI before FORUM, a private dispute-resolution company, seeking an order requiring GoDaddy to transfer the domain name multitrack.com from CCLI to MTC, pursuant to the Uniform Domain-Name

---

[1] The parties' joint case management report indicates that "on April 27, 2023, the USPTO refused MTC's application to register MULTITRACKS.COM because the purported mark 'is merely descriptive' as it 'simply describes applicant's goods and services as software for use with audio tracks that can be found at a particular Internet address." (Doc. 20 ¶ 8.) Nevertheless, it is undisputed that the registration attempt for MULTITRACKS.COM is still underway. (Docs. 39, 42.) Although the parties have not clarified what happened after the USPTO's refusal on April 27, 2023, the Court notes that there are avenues available to an applicant to revive an application following a refusal. *See, e.g., UAB "Planner5D" v. Facebook, Inc.*, 534 F. Supp. 3d 1126, 1129 (N.D. Cal. 2021) ("[C]opyright owners who are refused registration may request, within three months, reconsideration from the Copyright Office Registration Program.").

Dispute Resolution Policy ("UDRP") of the Internet Corporation for Assigned Names and Numbers ("ICANN"). (*Id.* ¶ 33.) In its UDRP Complaint, MTC claimed to have trademark rights in the three marks MTC has been attempting to register with the USPTO: MULTITRACKS CLOUD, MULTITRACKS STREAMING, and MULTITRACKS.COM. (*Id.* ¶¶ 34-35.)

On February 19, 2023, "the UDRP panel—which consisted of one private-practice attorney based in England—granted MTC's complaint and ordered the transfer of the domain name multitrack.com from CCLI to MTC." (*Id.* ¶ 45.) CCLI commenced this action ten days later, seeking a declaration that "its registration and use of the domain name multitrack.com is not unlawful." (*Id.* ¶¶ 51, 56.) CCLI also seeks "an order enjoining MTC from any and all further efforts to cause the domain name multitrack.com to be transferred to MTC." (*Id.* at 9.)

On April 11, 2023, MTC filed an answer and counterclaim. (Doc. 11.) In its counterclaim, MTC alleges that CCLI's use of the domain name multitrack.com is "designed and intended to create confusion" with MTC's asserted mark MULTITRACKS.COM, that CCLI had "a bad faith intent to profit from" this asserted mark, and that CCLI is using the domain name multitrack.com "to divert consumers from [MTC's] online location for commercial gain and to damage [MTC's] goodwill." (*Id.* at 9 ¶¶ 10-15.) MTC brings a claim for violation of 15 U.S.C. § 1125 and seeks damages as well as forfeiture of the domain name multitrack.com. (*Id.* at 9-10.)

On May 12, 2023, the parties filed a Rule 26(f) joint case management report. (Doc. 20.) That same day, the Court issued a case management order, setting various deadlines including, *inter alia*, a March 1, 2024 fact discovery deadline and an August 11, 2024 dispositive motions deadline. (Doc. 22.) The latter was recently extended, per the parties' stipulation, to September 16, 2024. (Doc. 55.)

Throughout 2023 and 2024, the parties engaged in discovery. (Docs. 24, 25, 26, 29, 30, 31, 35, 36, 38, 49.)

On February 21, 2024, the USPTO issued a notice of publication, indicating that the

asserted MULTITRACKS.COM mark was scheduled for publication on March 12, 2024. (Doc. 39 at 13.)

On March 12, 2024, the asserted MULTITRACKS.COM mark was published for opposition. (*Id.* at 15.) A section titled "Significance of Publication for Opposition" stated:

> Any party who believes it will be damaged by the registration of the mark may file a notice of opposition (or extension of time therefor) with the Trademark Trial and Appeal Board. If no party files an opposition or extension request within thirty (30) days after the publication date, then eleven (11) weeks after the publication date a certificate of registration should issue.

(*Id.*)

On March 18, 2024, CCLI requested a 90-day extension of time to file a notice of opposition, pursuant to 37 C.F.R. § 2.102, asserting as good cause[2] the need for additional time "to investigate the claim" and "confer with counsel." (Doc. 39 at 17.)

On April 26, 2024, MTC filed the pending motion to stay litigation, requesting that the Court stay this action until the opposition proceeding is resolved. (*Id.* at 1.) That motion is fully briefed. (Docs. 42, 46.)

**DISCUSSION**

I. <u>Legal Standard</u>

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When determining whether to issue a *Landis* stay, courts must weigh "competing interests," which include "the possible damage which may result from

---

[2] Section 2.102(c) permits a "first request" for either "a thirty-day extension of time, which will be granted upon request" or a "ninety-day extension of time, which will be granted only for good cause shown." Following a 90-day extension, a "final request" for "an additional sixty days" can be made via stipulation or "a showing of extraordinary circumstances."

the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and question of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). "[T]he proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). "If there is even a fair possibility that the stay will work damage to someone else, the party seeking the stay must make out a clear case of hardship or inequity." *Percy v. United States*, 2016 WL 7187129, *2 (D. Ariz. 2016).

"When related proceedings are pending in both a court infringement case and in a Trademark Board [("TTAB")] opposition or cancellation case, a court will almost always refuse to stay and suspend court proceedings to wait for the [TTAB] decision." 5 McCarthy on Trademarks and Unfair Competition § 32:48 (5th ed.).

> Under the rule of primary jurisdiction, a court may stay proceedings to await a decision by a federal agency when the issue involves technical questions of fact uniquely within the expertise and experience of an agency. Almost all courts hold that the rule of primary jurisdiction does not justify a federal court's stay of trademark litigation to await a decision in a registration proceeding before the Trademark Board. Case law reveals that two reasons predominate as the basis for the inapplicability of the primary jurisdiction rule: (1) the court can determine all issues of trademark validity and infringement in the case—the [TTAB] cannot; (2) trademark registration issues do not involve highly technical questions outside the competence of a federal District Court judge.

*Id.* (cleaned up). The Ninth Circuit has "addressed whether a district court should defer, on primary jurisdiction grounds, a trademark declaratory relief action pending the completion of related TTAB proceedings" and concluded that "the primary jurisdiction rationale does not justify deferral." *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1163 (9th Cir. 2007). The court's rationale was as follows:

> First, the TTAB is not an ordinary administrative agency whose findings control unless set aside after court review under a highly deferential standard. Under the Lanham Act, where a contested Board proceeding has already addressed the validity of the mark, the Board's findings can be challenged in a civil action in district court through new evidence, and, at least to a large extent, the issues can be litigated afresh. And Congress permits an initial proceeding in the district court to challenge or affirm a federally registered mark in civil suits in which a federally registered mark is in issue, even

> without any prior resort to the Board. Second, at least where an infringement claim is involved—whether directly asserted by an "owner" or challenged in a declaratory action—there is often some urgency. Ongoing business conduct is likely to be involved and harm, possibly irreparable, may be accruing. Further, unlike a federal district court, the Board cannot give relief for an infringement claim, either injunctive or by way of damages. Under these circumstances awaiting the Board's action is less attractive; and this is doubly so because (as already noted) its administrative findings can so easily be relitigated in court.

*Id.* (cleaned up).

"[S]ome situations might justify deferring a declaratory judgment case when related TTAB proceedings are pending; specifically, where the district court action involves only the issue of whether a mark is entitled to registration, it might make more sense to resolve the registration claims at the TTAB first." *Id.* at 1165 (cleaned up). But where "there is a potential infringement lawsuit, federal courts are particularly well-suited to handle the claims so that parties may quickly obtain a determination of their rights without accruing potential damages." *Id.* at 1164. "The deciding factor should be efficiency; the district court should exercise jurisdiction if this course is more efficient; otherwise, not." *Id.* at 1165 (cleaned up).

II. <u>Analysis</u>

Here, the action involves more than "only the issue of whether a mark is entitled to registration." CCLI notes that its action involves a determination of, *inter alia*, whether its use of the domain name multitrack.com is infringing. (Doc. 42 at 8-9.) MTC's counterclaim has added an infringement claim to this lawsuit. (Doc. 11 at 9-10.) If a "potential infringement lawsuit" is a reason in favor of district court resolution, *Rhoades*, 504 F.3d at 1164, it follows that the actual infringement claim within this case shows why a stay is inappropriate here. Indeed, there is not much (if any) benefit to be derived from waiting for the TTAB's determination. "Though potentially helpful, the TTAB's special expertise is hardly necessary in federal district courts which regularly adjudicate trademark matters. *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 468 (E.D. Cal. 1994). "Finally and most importantly, the validity or invalidity of defendant's registrations is not dispositive in an infringement suit. One can always overcome the presumption of

secondary meaning created by a valid registration, or establish secondary meaning in the absence of a registration." *Id.*

Furthermore, a stay would be inefficient for timing reasons. This case has already progressed to a late stage in the litigation. Fact discovery has been complete for months, and expert discovery has now been completed as well. The dispositive motions deadline is in a few weeks. The TTAB opposition proceeding, on the other hand, was not even underway at the time the stay motion was filed, and it is unclear whether it is underway now.[3] "Neither party has presented evidence regarding the time in which a TTAB proceeding could reasonably be expected to conclude." *PBTM LLC v. Football Northwest, LLC*, 2022 WL 2208157, *2 (W.D. Wash. 2022). Courts appear to assume that these proceedings could reasonably be expected to remain pending "for a year or more." *Roxbury Ent. v. Penthouse Media Grp., Inc.*, 2008 WL 11339095, *2 (C.D. Cal. 2008). Thus, "the delay resulting from an initial agency action that would then be subject to *de novo* review in district court is significant." *PBTM LLC*, 2022 WL 2208157 at *2. "[T]he parties [have] spent virtually no time before the TTAB and this Court has jurisdiction over all aspects of plaintiff's declaratory judgment claims." *Id.* at *3.

CCLI has a strong interest in "quickly obtain[ing] a determination of [its] rights without accruing potential damages." *Rhoades*, 504 F.3d at 1164. MTC, on the other hand, will suffer no hardship from litigating the relevant issues before this Court.

Accordingly,

**IT IS ORDERED** that MTC's motion to stay this action (Doc. 39) is **denied**.

Dated this 22nd day of August, 2024.

Dominic W. Lanza
United States District Judge

---

[3] CCLI's extension request was apparently granted, so the deadline to file a notice of opposition was extended to July 10, 2024. (Doc. 46 at 3.) The parties have not informed the Court whether a notice of opposition was filed by this deadline or whether a further 60-day extension pursuant to 37 C.F.R. § 2.102 was sought.