Andrew M. Hutchison, SBN 029819
Loeb & Loeb LLP
Two Embarcadero Center, Suite 2510
San Francisco, CA 94111
Telephone: 415.903.3200
Facsimile: 415.903.3201
Email: ahutchison@loeb.com

Tim Warnock (*pro hac vice*)
twarnock@loeb.com
Keane Barger (*pro hac vice*)
kbarger@loeb.com
35 Music Square East, Suite 310
Nashville, TN 37203
Telephone: 615.749.8300
Facsimile: 615.749.8308
Email: twarnock@loeb.com
          kbarger@loeb.com

*Attorneys for Plaintiff/Counterdefendant,
Christian Copyright
Licensing International, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Christian Copyright Licensing International, LLC, <br><br> Plaintiff/Counterdefendant, <br><br> vs. <br><br> MultiTracks.com, LLC, <br><br> Defendant/Counterclaimant. | Case No. 2:23-cv-00368-DWL <br><br> **CHRISTIAN COPYRIGHT LICENSING INTERNATIONAL, LLC'S MOTION FOR SUMMARY JUDGMENT** |

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

# TABLE OF CONTENTS

**Page**

I.   MULTITRACK AND MULTITRACKS ARE COMMON MUSIC INDUSTRY TERMS FOR A CLASS OF PRODUCTS ..................................................2

II.  MTC CHANGED ITS COMPANY NAME TO "MULTITRACKS.COM, LLC" .3

III. CCLI REGISTERED THE MULTITRACK.COM DOMAIN NAME ...................3

IV.  MTC FILED A UDRP COMPLAINT AGAINST CCLI..................................5

V.   CCLI FILED THIS ACTION UNDER THE ACPA..................................6

LEGAL STANDARD..................................................................................6

ARGUMENT ...............................................................................................6

I.   MTC HAS NO TRADEMARK RIGHTS IN THE PURPORTED MARKS .........7

     A.   Survey Evidence and Consumer Testimony..................................8

     B.   Exclusivity, Manner, and Length of Use ....................................10

     C.   Amount and Manner of Advertising............................................10

     D.   Amount of Sales and Number of Customers ................................11

     E.   Intentional Copying ...................................................................11

     F.   Unsolicited Media Coverage .......................................................11

II.  CCLI DID NOT REGISTER THE MULTITRACK.COM DOMAIN NAME  IN BAD FAITH ....................................................................................12

III. CCLI BELIEVED AND HAD REASONABLE GROUNDS TO BELIEVE THAT ITS USE OF THE MULTITRACK.COM DOMAIN WAS LAWFUL ................16

CONCLUSION...........................................................................................17

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

CHRISTIAN COPYRIGHT LICENSING
INTERNATIONAL, LLC'S MOTION FOR
SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*,
No. CV 10-03738 AB, 2015 U.S. Dist. LEXIS 120871 (C.D. Cal. Sept. 10,
2015).............................................................................................................12, 16

*Aviva United States Corp. v. Vazirani*,
902 F. Supp. 2d 1246 (D. Ariz. 2012)..........................................................12

*In re Benjamin & Bros., LLC*,
2023 TTAB LEXIS 419 (TTAB Sept. 26, 2023)..........................8, 9, 10, 11

*Booking.com v. Matal*,
278 F. Supp. 3d 891 (E.D. Va. 2017)............................................................10

*Bosley Med. Inst., Inc. v. Kremer*,
403 F.3d 672 (9th Cir. 2005).........................................................................6

*Dent v. Lotto Sport Italia SpA*,
No. CV-17-00651-PHX-DMF, 2020 U.S. Dist. LEXIS 42050 (D. Ariz.
Mar. 10, 2020)..............................................................................................17

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*,
198 F.3d 1143 (9th Cir. 1999)........................................................................8

*In re GJ & AM, LLC*,
2021 TTAB LEXIS 203 (TTAB Aug. 2, 2018)............................................10

*GoPets Ltd. v. Hise*,
657 F.3d 1024 (9th Cir. 2011).......................................................................13

*Interstellar Starship Servs. v. Epix, Inc.*,
304 F.3d 936 (9th Cir. 2002).....................................................................12, 16

*Japan Telecom, Inc. v. Japan Telecom Am., Inc.*,
287 F.3d 866 (9th Cir. 2002)..........................................................................7

*JL Bev. Co., LLC v. Jim Beam Brands Co.*,
828 F.3d 1098 (9th Cir. 2016)........................................................................7

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
543 U.S. 111 (2004) ..........................................................................13, 14, 15

*Lahoti v. VeriCheck, Inc.*,
    586 F.3d 1190 (9th Cir. 2009) ...................................................................17

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    632 F.2d 817 (9th Cir. 1980) .......................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .....................................................................................6

*Pocketbook Int'l v. Domain Admin/Sitetools*,
    No. CV 20-8708-DMG, 2021 U.S. Dist. LEXIS 74107 (C.D. Cal. Apr. 13,
    2021).............................................................................................................5

*In re Sausser Summers, PC*,
    2021 TTAB LEXIS 204 (TTAB Feb. 16, 2021) ................................8, 9, 10

*Storey v. Cello Holdings, L.L.C.*,
    247 F.3d 370 (2d Cir. 2003) ........................................................................5

*Trans Union LLC v. Credit Research, Inc.*,
    142 F. Supp. 2d 1029 (N.D. Ill. 2001).......................................................13

*United States PTO v. Booking.com B.V.*,
    591 U.S. 549 (2020) ............................................................................*passim*

*United States v. JP Morgan Chase Bank Account No. Ending 8215*,
    835 F.3d 1159 (9th Cir. 2016) .....................................................................6

*Verizon California Inc. v. Navigation Catalyst Sys., Inc.*,
    568 F. Supp. 2d 1088 (C.D. Cal. 2008)......................................................14

**Statutes**

15 U.S.C. § 1057(b) ...........................................................................................7

15 U.S.C. § 1114(2)(d)(v) ..................................................................................1

15 U.S.C. § 1115(b)(4).....................................................................................13

15 U.S.C. § 1125(d)(1)(A) ........................................................................*passim*

15 U.S.C. § 1125(d)(1)(A) .................................................................................1

15 U.S.C. § 1125(d)(1)(B)(i) ...........................................................................12

15 U.S.C. § 1125(d)(1)(B)(i)(III) ....................................................................13

15 U.S.C. § 1125(d)(1)(B)(i)(V) .....................................................................14

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

CHRISTIAN COPYRIGHT LICENSING
INTERNATIONAL, LLC'S MOTION FOR
SUMMARY JUDGMENT

15 U.S.C. § 1125(d)(1)(B)(i)(VI) ...................................................................15, 16

15 U.S.C. § 1125(d)(1)(B)(i)(VIII) ........................................................................16

15 U.S.C. § 1125(d)(1)(B)(i)(IX) ...........................................................................16

15 U.S.C. § 1125(d)(1)(B)(ii) ............................................................................7, 16

**Other Authorities**

Fed. R. Civ. P. 56 ....................................................................................................1

2 GILSON ON TRADEMARKS § 7A.06 (2024)..................................................12, 14

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

Pursuant to Fed. R. Civ. P. 56, Christian Copyright Licensing International, LLC ("CCLI") respectfully moves for the entry of summary judgment in its favor and against MultiTracks.com, LLC ("MTC"). As explained in the following memorandum of points and authorities, CCLI's registration of the multitrack.com domain name is lawful, as a matter of law, for three, independent reasons: (1) MTC has no trademark rights in any of the Purported Marks;[1] (2) CCLI did not register the multitrack.com domain name in bad faith; and (3) in any event, CCLI believed and had reasonable grounds to believe that its registration of the domain name was a fair use or otherwise lawful.

## MEMORANDUM OF POINTS AND AUTHORITIES

When enacting the Anticybersquatting Consumer Protection Act ("ACPA"), Congress sought to thwart overreaching cybersquatting claims. Congress fretted that claimants lacking trademark rights would abuse the accelerated, private domain-name takedown process to grab a domain name from a registrant who uses the domain lawfully without a bad-faith intent. Accordingly, Congress established a federal cause of action for domain-name owners to seek a declaration that they have not violated the ACPA. *See* 15 U.S.C. §§ 1114(2)(d)(v), 1125(d)(1)(A).

MTC is precisely the type of overreaching claimant Congress sought to counter when enacting the ACPA. Rather than compete fairly, in recent years MTC has sought to corner the market for multitrack licensing by monopolizing the generic terms "multitrack" and/or "multitracks." MTC incorporated "multitracks.com" into its company name precisely because "multitracks" is a generic, or at least merely descriptive, term for a class of products and ".com" is the most common, top-level domain for websites.

MTC filed a Uniform Domain Name Resolution Policy ("UDRP") complaint against CCLI, claiming that CCLI cannot use the domain name multitrack.com to describe a website that offers multitrack products. MTC's claim is brazen and unprecedented. The Supreme Court only recently held for the first time, in *United States PTO v. Booking.com B.V.*, 591

---

[1] MULTITRACKS CLOUD, MULTITRACKS STREAMING, and MULTITRACKS.COM.

CHRISTIAN COPYRIGHT LICENSING INTERNATIONAL, LLC'S MOTION FOR SUMMARY JUDGMENT

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

U.S. 549 (2020), that "generic.com" marks are eligible for trademark protection—but, even then, only in the most rare circumstances supported by the most stringent evidence. Since the *Booking.com* decision, no federal court has held that the owner of a "generic.com" domain name can prevent a competitor from using another "generic.com" domain name to describe its own website offering the class of product at issue. That is not surprising in light of the Supreme Court's repeated admonitions in *Booking.com* that "close variations" of a "generic.com" mark are "unlikely to infringe" and may be used as a "descriptive term[.]" *Id.* at 562.

This Court should reject MTC's request to trod new ground and make novel, anticompetitive law. The undisputed facts establish that (1) MTC has no protectable rights in the Purported Marks, (2) CCLI did not register the multitrack.com domain in bad faith, and (3) CCLI (correctly) believed and had reasonable grounds to believe that using the domain name to describe a website for multitrack products was fair and lawful.

## I.    MULTITRACK AND MULTITRACKS ARE COMMON MUSIC INDUSTRY TERMS FOR A CLASS OF PRODUCTS

The term "multitrack" means an audio recording that "us[es] more than one audio track." (Doc. 1 ¶ 13; Ex. 1 ("of an audio recording; using more than one audio track").) As Phillip Edwards, the founder and CEO of MTC, admitted, "Multitracks are individual audio files that have been separated into individual stems or tracks." (Ex. 2 at 8:7-11.) Multitrack and multitracks are terms commonly used within the music community since at least the 1960s to refer to this class of product. (Ex. 3 at 16:15-16 ("[T]he music industry well knows what multitracks are. It's part and parcel for what they do.").) The word "multitrack" is even used in the Copyright Office's official form for registering a copyright in a sound recording. (Ex. 4 at 2; *see also* Ex. 5 at 15 (music industry organizations discussing "multitrack" in report to Copyright Office); Ex. 6 at 50-51 (Register of Copyrights discussing "multitrack" recordings); Ex. 7 at 732 (congressional subcommittee discussing "multitrack" recordings); Ex. 8 at 23 (report commissioned by Library of Congress discussing "multitrack LP"); Ex.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

CHRISTIAN COPYRIGHT LICENSING
INTERNATIONAL, LLC'S MOTION FOR
SUMMARY JUDGMENT

9 at 28-29 (report commissioned by Library of Congress discussing "multitrack technologies").

As a prior version of MTC's website explained, one use of multitracks is to enhance worship music: "MultiTracks consist of all the parts from a recording, individually separated out for a worship leader to run from any music software . . . and can be run from the stage, almost like adding another instrument to your team." (Ex. 10 at 1; Ex. 2 at 29:3-14). The terms "multitrack" and "multitracks" are used by numerous entities—including entities in the music worship space—as a descriptive part of their products and website domain names. (Ex. 11 at 2 (screenshot of hymnmultitracks.com); Ex. 12 at 2 (screenshot of multitracksforworship.com); Ex. 13 at 2 (screenshot of flymultitracks.com); Ex. 14 at 2-6 (screenshot of multitrackmaster.com); Ex. 15 at 2-7 (screenshot of gospelmultitracks.com); Ex. 16 at 2-9 (screenshot of vocalmultitrack.com); Ex. 17 at 2-4 (screenshot of multitracksmusic.com);  Ex. 18 at 2 (screenshot of multitrackstudio.com); Ex. 19 at 2 (screenshot of multitracksapp.com/). In sum, "multitrack" is nothing more than a generic, or at best merely descriptive, common name for a class of products that facilitates the recording, playback, and/or mixing of sound recordings.

**II.     MTC CHANGED ITS COMPANY NAME TO "MULTITRACKS.COM, LLC"**

MTC is one company—among many—that offers licenses for multitracks for use in worship services. (Ex. 2 at 16:5-15.) When Edwards founded MTC in 2006, he named the company Interactive Worship Live LLC. (Ex. 20 at 1.) In 2011, Edwards changed the name of the company to MultiTracks.com, LLC. (Ex. 21 at 1.) Edwards did so because the name "encapsulates who we are, what we do[]"—that is to say, sell multitracks products.  (Ex. 2 at 26:17-25.)

**III.     CCLI REGISTERED THE MULTITRACK.COM DOMAIN NAME**

Founded in 1988, CCLI is the preeminent provider of copyright licenses that facilitate worship services across the United States. (Doc. 1 § 6; Ex. 22 at 1; Ex. 3 at 13:18-23.) CCLI is part of a family of companies owned by the StarPraise Group, LLC ("StarPraise"). (Ex. 3 at 8:12-9:14.) As part of its "established and ongoing" marketing strategy, CCLI has

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

CHRISTIAN COPYRIGHT LICENSING
INTERNATIONAL, LLC'S MOTION FOR
SUMMARY JUDGMENT

acquired "generic descriptor domains that point to various products and services throughout [its] family of companies." (*Id.* at 24:22-25:11.) CCLI "acquire[s] descriptive terms that relate to products and services" that its family of companies sell. (*Id.*) CCLI does so to ensure that when consumers search online for a product sold by CCLI and/or its affiliates, those consumers "end[] up either on generic landing pages because we have future use for [the domains] or [consumers] land directed to the appropriate products and services" in the "larger family of brands and services." (*Id.*) For generic or descriptive domain names, CCLI "routinely redirect[s] them . . . to corresponding products or sites that relate to the descriptive term." (*Id.* at 40:2-13.)

In 2020, StarPraise acquired OmniSonic Media Group, LLC d/b/a Loop Community ("Loop Community") and, accordingly, Loop Community became an affiliated company of CCLI. (Doc. 1 ¶ 6; Ex. 3 at 8:19-9:14.) Loop Community is in the business of delivering multitracks for use in, among other things, Christian worship services. (Doc. 1 ¶ 7; Ex. 3 at 11:19-24, 17:13-19, 41:8-11; Ex. 23 at 2.)

At the beginning of 2021, a "gentleman who did repairs on multitrack recorders" owned the multitrack.com domain name. (Ex. 2 at 32:6-33:15.) Consistent with CCLI's strategy to register domain names containing generic and/or descriptive terms that relate to the products and services offered by CCLI and its family of companies, in 2021 George Ross—the Chief Technology Officer at CCLI—used the domain broker service GoDaddy to register the multitrack.com domain name. (Ex. 24 ¶ 3; Ex. 3 at 10:10-18; Doc. 1 ¶ 19; Doc. 11 ¶ 19.) Although MTC was familiar with and had visited the multitrack.com webpage—which was "outdated" and "circa 1995 or mid 90s"—years prior to CCLI's registration, MTC chose not to register the domain name first. (Ex. 2 at 36:22-37:17.) GoDaddy erroneously named the registrant organization in GoDaddy's files as "George" and the registrant name as "George George." (Ex. 24 ¶¶ 4-5.) The uncontested proof is that Ross does "not know why GoDaddy chose to use [his] first name when assigning the names for the registrant organization and registration name." (*Id.* ¶ 6.)

CHRISTIAN COPYRIGHT LICENSING
INTERNATIONAL, LLC'S MOTION FOR
SUMMARY JUDGMENT

The multitrack.com domain name initially resolved to loopcommunity.com—a website operated by Loop Community where consumers may view and purchase multitrack products. (Doc. 1 ¶ 20; Ex. 3 at 41:1-12; Ex. 25 at 2-3.) On March 29, 2022, Ross received a phone call from Steve McPherson, Director of Global Licensing and Partnerships for MTC. (Ex. 24 ¶ 7.) McPherson requested that Ross cause the multitrack.com domain name not to resolve to loopcommunity.com. (*Id.* ¶ 9.) Because of Ross's preexisting personal relationship with McPherson, Ross agreed to instead cause the multitrack.com domain name to resolve to worshipfuel.com, a blog owned and maintained by CCLI that provides commentary on using multitracks in worship services. (*Id.* ¶¶ 8, 10; Ex. 26.) Ross agreed to "make this change as a friendly gesture, not out of any legal obligation to do so[.]" (Ex. 24 ¶ 11.) Ross "believed—and still believes—that [MTC] has no rights" in the generic, or at best descriptive, MULTITRACKS.COM mark. (Ex. 24 ¶ 11.) At the time CCLI registered the multitrack.com domain name—and continuing to this day—MTC does not possess a federal trademark registration on the Principal Register for any of the Purported Marks.

## IV.   MTC FILED A UDRP COMPLAINT AGAINST CCLI

On November 21, 2022, MTC filed a complaint against CCLI pursuant to the UDRP of the Internet Corporation for Assigned Names and Numbers ("ICANN") before FORUM, a private dispute-resolution company. (Doc. 1 ¶ 33; Ex. 27.) ICANN promulgated the UDRP to establish an administrative remedy, dictated by contract, to address "cybersquatting." In the interest of expediency, the UDRP establishes an accelerated process for resolution lacking any of the procedural safeguards of federal-court litigation, including discovery procedures. *Storey v. Cello Holdings, L.L.C.*, 247 F.3d 370, 381-83 (2d Cir. 2003). Thus, no "deference" is accorded to the resolution of a UDRP proceeding. *Id.* (quoting *Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 386 (4th Cir. 2003)); *Pocketbook Int'l v. Domain Admin/Sitetools*, No. CV 20-8708-DMG (PDx), 2021 U.S. Dist. LEXIS 74107, at *10 (C.D. Cal. Apr. 13, 2021).

In its UDRP Complaint, MTC claimed to have trademark rights in the three Purported Marks. (Ex. 27 at 3.) MTC made this claim even though none of the three Purported Marks

CHRISTIAN COPYRIGHT LICENSING INTERNATIONAL, LLC'S MOTION FOR SUMMARY JUDGMENT

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

is registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"). (Doc. 1 ¶ 35; Doc. 11 ¶ 35.) In a decision dated February 19, 2023, the UDRP panel—which consisted of one private-practice attorney based in England—granted MTC's UDRP Complaint and ordered the transfer of the domain name multitrack.com from CCLI to MTC. (Doc. 1 ¶ 45; Doc. 11 ¶ 45.)

## V.   CCLI FILED THIS ACTION UNDER THE ACPA

On March 1, 2023, CCLI filed this action pursuant to the ACPA, seeking (1) a declaration that its registration and use of the domain name multitrack.com is not unlawful and (2) an order enjoining MTC from attempting to cause the domain name multitrack.com to be transferred to MTC. (Doc. 1 ¶¶ 47-56 & Prayer for Relief.) MTC filed a counterclaim seeking damages for violation of the ACPA and an order requiring CCLI to "forfeit[]" the multitrack.com domain name. (Doc. 11 ¶¶ 9-18.) MTC abandoned its contention that it has rights in the purported MULTITRACKS CLOUD and MULTITRACKS STREAMING marks. (*Id.* (referring only to the purported MULTITRACKS.COM mark).) CCLI now moves for summary judgment.

## LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *See, e.g., United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

## ARGUMENT

To establish a claim under the ACPA, MTC must prove "(1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 681 (9th Cir. 2005);

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

- 6 -

CHRISTIAN COPYRIGHT LICENSING
INTERNATIONAL, LLC'S MOTION FOR
SUMMARY JUDGMENT

15 U.S.C. § 1125(d)(1)(A). Moreover, a bad-faith intent "shall not be found" if CCLI "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." *Id.* § 1125(d)(1)(B)(ii). CCLI is entitled to summary judgment because MTC cannot establish (1) that MTC has protectable rights in the Purported Marks; (2) that CCLI registered the multitrack.com domain name in bad faith; or (3) that CCLI did not believe or have reasonable grounds to believe that the registration of the domain name was a fair use or otherwise lawful.[2]

## I.   MTC HAS NO TRADEMARK RIGHTS IN THE PURPORTED MARKS

MTC has no trademark registrations on the Principal Register for any of the Purported Marks. (Doc. 1 ¶ 35; Doc. 11 ¶ 35.) MTC thus cannot rely on any registration to establish *prima facie* trademark ownership. *See* 15 U.S.C. § 1057(b).

Each of the Purported Marks is generic or, at best, merely descriptive of multitrack or multitracks products. *See supra* (setting forth undisputed evidence that the term "multitracks" is a common, music industry term for a class of products); Ex. 28 (USPTO concluding MULTITRACKS.COM "merely describes a characteristic of applicant's goods and/or services"); Ex. 29 (USPTO concluding MULTITRACKS CLOUD "merely describes a feature of applicant's services")); *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 872 (9th Cir. 2002) (stating "descriptive terms . . . describe a person, a place or an attribute of a product" (quotations and alterations omitted)); *JL Bev. Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016) ("Descriptive marks define a particular characteristic of the product in a way that does not require any imagination . . . ."). So, "to show the mark is protectable," MTC must establish that the mark has acquired secondary meaning, which is also called acquired distinctiveness—"a mental recognition in buyers' and potential buyers' minds that products connected with the mark are associated with the same source." *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 820 (9th Cir. 1980).

---

[2] CCLI contests that its domain name is confusingly similar or dilutive but has chosen not to raise this issue on summary judgment. CCLI expressly reserves all available arguments for trial, if necessary.

CHRISTIAN COPYRIGHT LICENSING INTERNATIONAL, LLC'S MOTION FOR SUMMARY JUDGMENT

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

During discovery, MTC failed even to attempt to produce evidence establishing that MULTITRACKS CLOUD or MULTITRACKS STREAMING has acquired secondary meaning. This is not surprising, as MTC's counterclaim abandoned any such pretense. (Doc. 11 (referring only to the purported MULTITRACKS.COM mark).) The Court is therefore left to decide only whether MULTITRACKS.COM has acquired secondary meaning.

The purported mark consists of a generic term (MULTITRACKS) and generic top-level domain (.COM). While the Supreme Court has held that a "generic.com" term is not *per se* unprotectable, *Booking.com*, 591 U.S. at 557, the evidence required to prove that such a descriptive term has acquired distinctiveness is sky high, *In re Benjamin & Bros., LLC*, 2023 TTAB LEXIS 419, at *50 (TTAB Sept. 26, 2023); *In re Sausser Summers, PC*, 2021 TTAB LEXIS 204, at *12 (TTAB Feb. 16, 2021).[3] To evaluate whether a party can surmount this maximal hurdle, the factfinder may consider, *inter alia*, "direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999). Applying these factors, no reasonable juror could conclude that MTC has satisfied the rigorous evidentiary standard required to prove that the "generic.com" mark has acquired distinctiveness.

## A. Survey Evidence and Consumer Testimony

MTC produced the Expert Report of Dr. Isabella Cunningham (Ex. 30) —a report so flawed that no reasonable factfinder could rely upon it. (*See also* Exs. 31, 32.) Dr. Cunningham replicated the *Teflon* survey methodology utilized by Hal Poret, the expert retained in *Booking.com*, to test whether a mark is generic. (Ex. 31 at 15.) Dr. Cunningham's report has no relevance here because she conducted only a genericness survey, rather than a

---

[3]CCLI contests that MULTITRACKS.COM is anything more than a generic term. CCLI has chosen not to raise this issue on summary judgment, however, and instead focus this motion on acquired distinctiveness.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

CHRISTIAN COPYRIGHT LICENSING
INTERNATIONAL, LLC'S MOTION FOR
SUMMARY JUDGMENT

secondary-meaning survey. As Dr. Cunningham admitted, the "entire discussion of secondary meaning is a red herring[]" to her report. (Ex. 32 at 6.)

Even if the report were not a red herring to the secondary-meaning analysis, her merely copying Poret's work is not helpful. As the TTAB recently noted when evaluating another *Teflon* survey replicating Poret's work, "the acceptability of the [Poret] survey was not before the Supreme Court in *Booking.com*." *In re Benjamin*, 2023 TTAB LEXIS 419, at *34. The Supreme Court considered only the pure legal issue of whether a generic.com domain name may be protectable.

According to the TTAB's *In re Benjamin* decision, the Poret survey methodology is critically flawed. Here, Dr. Cunningham's report is similarly faulty. Among other defects, (1) "only two of the six names used to educate survey participants on the difference between common and brand names were '.com' names," (2) "neither term in the mini test used to test participants' understanding of the difference between a common name and brand name was a '.com' name[,]" and (3) approximately 40% of respondents "incorrectly identified WASHINGMACHINE.COM as a brand name[.]" *Id.* at *35-37 (Ex. 30, Appendix 1 at 11, 13, Appendix 4 at 1.) Thus, just like the *In re Benjamin* survey, these critical errors (and others) render Dr. Cunningham's survey methodology insufficient to establish acquired distinctiveness.

With respect to consumer testimony, during discovery MTC produced two declarations from Christian music industry executives. (Exs. 33, 34.) Those declarations unwittingly undermine MTC's attempt to establish secondary meaning. The first declaration states that "any time personnel in the Company communicate using the term 'Multitracks', they refer to the Complainant's platform and services." (Ex. 33 ¶ 8.) As the TTAB has held, customers referring to a company as the generic term, without the ".com" appendage, is proof that consumers do *not* associate the proposed "generic.com" mark solely with the applicant. *In re Sausser*, 2021 TTAB LEXIS 204, at *16. The second declaration states that "the MULTITRACKS.COM trademark is associated with Multitracks, LLC[.]" (Ex. 34 ¶ 7.) MTC's company name is "MultiTracks.com, LLC"—not "Multitracks, LLC" without the

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

CHRISTIAN COPYRIGHT LICENSING INTERNATIONAL, LLC'S MOTION FOR SUMMARY JUDGMENT

".com" appendage—so the declaration shows, if anything, proof that consumers do not know the source of MTC's products.

**B.    Exclusivity, Manner, and Length of Use**

"[G]iven the highly descriptive nature of" a generic.com mark, the use of such a mark for even multiple decades "is insufficient to prove that it has acquired distinctiveness." *In re Sausser*, 2021 TTAB LEXIS 204, at \*16 (finding use since 2013 insufficient to establish secondary meaning); *In re Benjamin*, 2023 TTAB LEXIS 419, at \*56 (collecting authorities); *In re GJ & AM, LLC*, 2021 TTAB LEXIS 203 (TTAB Aug. 2, 2018) (same). Moreover, it is undisputed that numerous entities have used the word "multitracks" to describe their products—and even used the words "multitracks" and ".com" in their domain names. (*See supra*, Exs. 10-18.) Evidence of "third parties" incorporating the "generic.com" terms into their domain names and offering the described products "severely undercuts" any claim of exclusive use. *In re Benjamin*, 2023 TTAB LEXIS 419, at \*34 (collecting authorities).

**C.    Amount and Manner of Advertising**

From 2011 to 2022, MTC spent only $███████, or $███████ per year, on advertising and marketing. (Ex. 35.) That pales in comparison to the parent company of Booking.com, which spent over $11.4 billion on marketing and promotion during a shorter span. (Ex. 31 at 16.) The TTAB has even found "220 million dollars" of advertising insufficient to establish acquired distinctiveness for a descriptive generic.com domain name. *In re Benjamin*, 2023 TTAB LEXIS 419, at \*59. Moreover, MTC has failed to produce evidence establishing how many consumers were *actually* exposed to the purported mark as a result of MTC's advertising. *See id.* at \*60 (finding no acquired distinctiveness where record "failed to disclose . . . number of people exposed" to the mark); *Booking.com v. Matal*, 278 F. Supp. 3d 891, 919 (E.D. Va. 2017) (finding acquired distinctiveness from television and web advertisements that received "billions" of "visual impressions" from U.S. consumers). Moreover, the advertising examples produced by MTC are replete with a composite mark containing a logo next to "Multitracks.com": ![MultiTracks.com logo] (Ex.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

CHRISTIAN COPYRIGHT LICENSING
INTERNATIONAL, LLC'S MOTION FOR
SUMMARY JUDGMENT

36.) Thus, one cannot disentangle the source-identifying impression of this composite mark from MULTITRACKS.COM alone. *See In re Benjamin*, 2023 TTAB LEXIS 419, at *63.

**D.    Amount of Sales and Number of Customers**

With respect to sales and number of customers, during discovery MTC produced information only regarding the number of accounts and unique visitors on its website. (Exs. 37-38.) As Mr. Edwards admitted, however, "the number of accounts created" is "not necessarily indicative" of sales. (Ex. 2 at 84:23-85:22.) Moreover, MTC failed to produce "evidence regarding its market share or where [its] services rank in the industry in terms of sales[.]" *In re Benjamin*, 2023 TTAB LEXIS 419, at *34. As Edwards admitted, he does not know his company's market share and can only "guess." (Ex. 39 at 61:15-64:12.)

**E.    Intentional Copying**

There is zero evidence that third parties have intentionally copied the purported mark MULTITRACKS.COM. It is not clear how intentional copying would be possible, given that "multitracks" and ".com" are nothing more than the generic and/or descriptive names for a class of products that can be found online.

**F.    Unsolicited Media Coverage**

As evidence of unsolicited media coverage, MTC has pointed to nine publications. (*See* Ex. 40.) Two of those publications focus on Edwards himself, rather than his company (*id.* at CCLI0000264, 267), and thus carry no weight, *In re Benjamin*, 2023 TTAB LEXIS 419, at *69. Two of the remaining seven use only the composite mark  (Ex. 40 at CCLI0000269, 274), and thus have no probative value, *In re Benjamin*, 2023 TTAB LEXIS 419, at *63. Three of the remaining five show that MTC itself, and consumers, refer to MTC as "Multitracks" rather than "Multitracks.com." (Ex. 40 at CCLI0000272 ("Multitracks has agreements with . . . ."), 276 ("I merged my site with MultiTracks . . . . "), 286 ("I started with multitracks but recently began using loop community . . . .").) Regardless, even "eight articles" is "not a significant amount" when a purported mark has been used for over a decade. *In re Benjamin*, 2023 TTAB LEXIS 419, at *69-70. And MTC has no evidence of the circulation numbers for these publications. *See id.*

In sum, MTC cannot establish that any of the relevant factors even remotely approach the kind of evidence necessary to surmount the high hurdle necessary for a descriptive, generic.com domain name to acquire secondary meaning. MTC is not *Booking.com*. No reasonable juror presented with these facts could conclude otherwise.

## II.   CCLI DID NOT REGISTER THE <u>MULTITRACK.COM</u> DOMAIN NAME  IN BAD FAITH

Even if MTC could prove that MULTITRACK.COM has acquired distinctiveness (it has not), CCLI is still entitled to judgment as a matter of law because MTC cannot prove that CCLI registered the <u>multitrack.com</u> domain name with a bad-faith intent to profit from MTC's purported mark. Rather than attempt to trade off the goodwill of MTC, the undisputed facts establish that CCLI registered the <u>multitrack.com</u> domain name for a lawful reason: to describe its own website offering multitrack products. A party acts in good faith when it "adopt[s]" the domain name "as a descriptive term" for its goods and services. *Interstellar Starship Servs. v. Epix, Inc.*, 304 F.3d 936, 947 (9th Cir. 2002); 2 GILSON ON TRADEMARKS § 7A.06 (2024) ("Registration of a generic term or common word alone is unlikely to be considered an indication of bad faith because any party could have registered that word as a domain name . . . with no attempt to trade off of a trademark owner's goodwill.").

Nine, nonexclusive statutory factors govern the bad-faith analysis. 15 U.S.C. § 1125(d)(1)(B)(i); *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-03738 AB (CWx), 2015 U.S. Dist. LEXIS 120871, at *137 (C.D. Cal. Sept. 10, 2015) (discussing factors). The "factors attempt to balance the property interests of trademark owners with the legitimate interests of Internet users and others who seek to make lawful uses of other's marks[.]" *Aviva United States Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1266 (D. Ariz. 2012) (quotation omitted). No reasonable juror, when evaluating these factors, could conclude that CCLI acted in bad faith.

1.   CCLI has the right—like any purveyor of goods and services—to use generic and/or descriptive terms ("multitrack" and ".com") to describe its products. *See KP*

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

*Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) (stating trademark law cannot "deprive commercial speakers of the ordinary utility of descriptive words"). The first factor weighs against bad faith.

2.    No one contends that MULTITRACKS.COM is the "legal name" of any person, so the second factor is inapposite.

3.    It is undisputed that CCLI, through its affiliated companies, used the terms "multitrack" and ".com" in connection with the bona fide offering of multitrack products. (*See, e.g.*, Ex. 3 at 11:19-24, 17:13-19, 41:8-11; Ex. 23 at 2.) There is also no dispute that, even before CCLI acquired the multitrack.com domain name, the prior owner of the domain also used that domain in connection with his bona fide offering of multitrack services. (Ex. 2 at 32:6-33:15.) As the Ninth Circuit has held, when a domain name—like any other piece of property—is sold, "all of the rights" in that property transfer. *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1031 (9th Cir. 2011). Accordingly, CCLI's descriptive use of the multitrack.com domain name predates MTC's use of the multitracks.com domain name. This factor weighs against bad faith.

4.    CCLI indisputably made "fair use of the mark in a site accessible under the domain name." 15 U.S.C. § 1125(d)(1)(B)(i)(III). "Fair use" is "a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party[.]" 15 U.S.C. § 1115(b)(4). The rationale behind the fair-use doctrine centers on "the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first." *KP Permanent Make-Up*, 543 U.S. at 122.

Consistent with that purpose, "courts have held that the fair use doctrine applies when a defendant uses another's trademark simply to describe the content of defendant's website." *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1039 (N.D. Ill. 2001) (citing *Brookfield Communs., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1065 (9th Cir. 1999); *Bihari v. Gross*, 119 F. Supp. 2d 309, 321-24 (S.D.N.Y. 2000); *Playboy Enters., Inc. v. Welles*, 7 F. Supp. 2d 1098, 1103-04 (S.D. Cal. 1998); 4 J. Thomas

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

- 13 -

CHRISTIAN COPYRIGHT LICENSING
INTERNATIONAL, LLC'S MOTION FOR
SUMMARY JUDGMENT

McCarthy, McCarthy on Trademarks and Unfair Competition § 25:69 (4th ed. 2000)). Because parties are free to use a generic or descriptive term to describe their products on a website accessible through a top-level domain, "[t]he first party to register a generic or descriptive term in a domain name should generally have the right to retain that domain name[.]" 2 Gilson on Trademarks § 7A.06 (2024).

Here, it is undisputed that long before the acquisition of Loop Community, CCLI had a pattern and practice of purchasing "generic descriptor domains" for its affiliated companies. (Ex. 3 at 24:22-25:11, 40:2-13.) CCLI did so not out of any attempt to take advantage of the goodwill of someone else's mark, but to leverage the inherent power that such generic and descriptive names necessarily have in the marketplace, as MTC well knows. *See Booking.com*, 591 U.S. at 574 (discussing inherent "competitive advantages" of "doing business under a generic name") (Breyer, J., dissenting). Consistent with that practice, CCLI acquired the <u>multitrack.com</u> domain name in good faith to provide consumers access to its website that offers multitrack products. This factor weighs against bad faith.

5.      Nor is there any evidence that CCLI sought to "divert consumers . . .  by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." 15 U.S.C. § 1125(d)(1)(B)(i)(V). MTC has argued that CCLI sought to confuse consumers by engaging in " 'typosquatting' — that is, registering intentional misspellings of famous trademarks or names." *Verizon California Inc. v. Navigation Catalyst Sys., Inc.*, 568 F. Supp. 2d 1088, 1094 (C.D. Cal. 2008). But "multitrack.com" is not a misspelling; it is a permissible and correct spelling of a generic.com domain address.

As the Supreme Court has explained, the law has a "tolerance of a certain degree of confusion on the part of consumers from the very fact that . . . an originally descriptive term was selected to be used as a mark." *KP Permanent Make-Up*, 543 U.S. at 122. If "any confusion results" from CCLI's registration of <u>multitrack.com</u>, "that is a risk [MTC] accepted when it decided to identify its product with a mark that uses a well known descriptive phrase[.]" *Id.* (quotation omitted).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

CHRISTIAN COPYRIGHT LICENSING
INTERNATIONAL, LLC'S MOTION FOR
SUMMARY JUDGMENT

In fact, the Supreme Court—and the litigants in the *Booking.com* case—were well aware of the severe limitations imposed on one's trademark rights by doing business under a generic.com mark. During oral argument, Booking.com conceded that it has no right to object to a "slight variation" of its mark:

> JUSTICE ALITO: You would not -- your client would not object to the registration of any trademark that simply made a slight variation in Booking.com? That would be fine? All of those companies could register their trademarks? . . . Would your client object to that?
>
> MS. BLATT: They don't and have not and would not. Now, if there was fraud and somebody ripping off the goodwill based on Booking.com, I'm sure they'd want to sue, but it -- it would be very hard to bring that lawsuit. Very hard.

(Ex. 41 at 55:21-56:14.) Consistent with these severe limitations, in its briefing Booking.com argued that the kind of "typosquatting" that the registration of BOOKING.COM would deter was "replac[ing] an 'o' in Booking.com with a '0'—'B0oking.com'—to fool unsuspecting customers, or register the typo 'Bookng.com[.]' " (Ex. 42 at 26.) In *Booking.com*, the Court and litigants did not suggest—nor has a federal court held—that trademark rights in a generic.com domain address prohibit the use of a similar, yet accurately spelled, generic.com domain address used to sell the generic class of products at issue. To the contrary, the Supreme Court cautioned that generic.com marks are "weak[,]" "close variations are unlikely to infringe[,]"and registration does not "inhibit competitors from . . . adopting domain names" with even one-letter variations such "'ebooking.com'" *Booking.com*, 591 U.S. at 561-62. MTC's "typosquatting" argument fails as a matter of law. This factor weighs against bad faith.

6.      No evidence exists that CCLI has ever "offer[ed] to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct." 15 U.S.C. § 1125(d)(1)(B)(i)(VI). This factor weighs against bad faith.

7.      The undisputed facts establish that CCLI did not provide "material and misleading false contact information" to GoDaddy when registering the domain name. 15

U.S.C. § 1125(d)(1)(B)(i)(VI). MTC has tried to make much of GoDaddy's erroneous recording of the registrant as "George George." But Ross has testified—without any contrary evidence—that he did not make that decision (Ex. 24 ¶¶ 4-6), and a "mere honest mistake in identification has no [bad faith] import[,]" *Acad. of Motion Picture Arts & Scis.*, 2015 U.S. Dist. LEXIS 120871, at *137 (quotation omitted). Moreover, it is nonsensical to claim that Ross sought to provide "material" or "misleading" information. If Ross sought to mislead, he would not have used his real first name and a StarPraise email account. No rational juror could accept MTC's unreasonable argument. This factor weighs against bad faith.

8.      There is zero evidence that CCLI has registered or acquired "multiple domain names which the person knows are identical or confusingly similar to marks of others[.]" 15 U.S.C. § 1125(d)(1)(B)(i)(VIII). This factor weighs against bad faith.

9.      The final factor weighs heavily against any finding of bad faith because, for all of the reasons explained above in Section I, the purported mark MULTITRACKS.COM does not have acquired distinctiveness. 15 U.S.C. § 1125(d)(1)(B)(i)(IX).

In sum, each of the relevant factors weigh against any finding of bad faith. Therefore, no reasonable juror could conclude that CCLI is liable under the ACPA.

## III. CCLI BELIEVED AND HAD REASONABLE GROUNDS TO BELIEVE THAT ITS USE OF THE <u>MULTITRACK.COM</u> DOMAIN WAS LAWFUL

The undisputed facts establish that CCLI's registration of the <u>multitrack.com</u> domain is subject to the ACPA's "safe harbor" that bad faith "shall not be found in any case in which the court determines that the person believed and had a reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii) (codifying "reasonable grounds" defense). The Ninth Circuit has applied the safe harbor where, for example, a party "adopted" a domain name "as a descriptive term to connote" the class of products sold on his website. *Interstellar Starship Servs.*, 304 F.3d at 947; *see also Dent v. Lotto Sport Italia SpA*, No. CV-17-00651-PHX-DMF, 2020 U.S. Dist. LEXIS 42050, at *31 (D. Ariz. Mar. 10, 2020) (granting summary judgment based on safe-harbor provision "because the domain names are generic or descriptive"). This provision may be applied only

"very sparingly and only in the most unusual cases" when a party does not act "even partially in bad faith." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 (9th Cir. 2009). This is precisely such an "unusual case."

Unlike the typical ACPA case, (1) MTC had no registration on the Principal Register at the time CCLI registered the domain name; (2) the Supreme Court only recently held in *Booking.com* that generic.com domain names are protectable at all and everyone involved agreed such marks are weak; (3) MTC is nothing like Booking.com in terms of its size and scale; and (4) to this day, no federal court has held—or suggested—that registering a generic.com domain name as a descriptive term for selling the class of products at issue on a website violates the ACPA. MTC's claim that CCLI violated its purported rights in a generic.com mark by registering a different generic.com mark has no precedent and is unmoored from the law. In light of these facts—all of which are undisputed—no reasonable juror could find that CCLI did not believe (correctly), and have reasonable grounds to believe, that its use of the generic.com domain name was lawful.

## CONCLUSION

For the foregoing reasons, CCLI respectfully requests that the Court enter summary judgment in favor of CCLI and against MTC.


Dated:  September 16. 2024                    Respectfully submitted,

LOEB & LOEB LLP
Andrew M. Hutchison
Tim Warnock
Keane Barger


By: /s/ Andrew M. Hutchison
          Andrew M. Hutchison
*Attorneys for Christian Copyright*
*Licensing International, LLC*

**TABLE OF CONTENTS FOR EXHIBITS**

1.  Merriam-Webster Dictionary Definition of Multitrack;

2.  Deposition of Phillip Edwards dated Feb. 16, 2024;

3.  Videoconference Deposition of George Ross dated Feb. 20, 2024;

4.  Copyright Office Form SR;

5.  *In re Federal Copyright Protection of Sound Recordings Fixed Before February 15, 1972*, Comments of Recording Industry of America (RIAA) and American Association of Independent Music (A2IM);

6.  Federal Copyright Protection for Pre-1972 Sound Recordings, A Report of Register of Copyrights (Dec. 2011);

7.  Performance Rights in Sound Recordings, Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the Committee on the Judiciary, House of Representatives, Ninety-Fifth Congress, Second Session (June 1978);

8.  Tim Brooks, Survey of Reissues of U.S. Recordings, Commissioned for and Sponsored by the National Recording Preservation Board, Library of Congress (Aug. 2005);

9.  The State of Recording Sound Preservation in the United States, A National Legacy at Risk in the Digital Age Commissioned for and Sponsored by the National Recording Preservation Board of the Library of Congress (Aug. 2010);

10.  Screenshot of interactiveworshiplive.com;

11.  Screenshot of hymmultitracks.com;

12.  Screenshot of multitracksforworship.com;

13.  Screenshot of flymultitracks.com;

14.  Screenshot of multitrackmaster.com;

15.  Screenshot of gospelmultitracks.com;

16.  Screenshot of vocalmultitrack.com;

17.  Screenshot of multitracksmusic.com;

18.  Screenshot of multitrackstudio.com;

19.  Screenshot of multitracksapp.com;

- 18 -

CHRISTIAN COPYRIGHT LICENSING
INTERNATIONAL, LLC'S MOTION FOR
SUMMARY JUDGMENT

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

20. Certificate of Formation of Interactive Worship Live LLC;

21. Certificate of Amendment of Interactive Worship Live LLC;

22. Screenshot of CCLI Website;

23. Screenshot of LoopCommunity Website;

24. Declaration of George Ross;

25. Screenshot of multitrack.com dated Dec. 17, 2021;

26. Screenshot of multitrack.com dated Aug. 9, 2022;

27. Compliant in Accordance with the Uniform Domain Name Dispute Resolution Policy dated Nov. 5, 2022;

28. United States Patent and Trademark Office, Nonfinal Office Action dated Apr. 27, 2023;

29. United States Patent and Trademark Office, Office Action dated Mar. 25, 2015;

30. Expert Report of Dr. Isabella Cunningham;

31. Expert Responding Report of Samantha Iyengar, Ph.D.;

32. Report of Dr. Isabella Cunningham, Rebuttal to Samantha Iyengar Responding Report;

33. Declaration of Timothy Whincop;

34. Declaration of Joseph Olide;

35. MultiTracks.com, LLC Advertising and Marketing Summary;

36. Gospel Music Association Organizational Members;

37. Declaration of Phillip Edwards;

38. Email dated Feb. 27, 2024;

39. Deposition of Phillip Edwards dated Mar. 1, 2024;

40. Collection of MTC Media Coverage;

41. Transcript of Supreme Court Oral Argument, *United States Patent and Trademark Office, et al., v. Booking.com B.V.*, No. 19-46; and

CHRISTIAN COPYRIGHT LICENSING
INTERNATIONAL, LLC'S MOTION FOR
SUMMARY JUDGMENT

42. Brief for the Respondent, *United States Patent and Trademark Office, et al., v. Booking.com B.V.*, No. 19-46.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations